RICHARD K. DAVIDSON, APPELLANT AND CROSS-APPELLEE, V.
MARSHA C. DAVIDSON, APPELLEE AND CROSS-APPELLANT.
578 N.W. 2d 848

Filed May 22, 1998.   No. S-96-951.

Edward D. Hotz, of Hotz & Weaver, for appellant.

John S. Slowiaczek, Sandra L. Dougherty, and Virginia A. Albers, of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The central issue on appeal in this marital dissolution is whether and to what extent an interest in stock option and retention stock benefit plans provided by a spouse's employer constitutes marital property. We conclude that such plans, in the instant case, constitute marital property and that a time rule should be applied to determine to what extent the stock options and retention shares were earned during the marriage. Because the trial court erroneously excluded certain unvested stock options and retention stock, we affirm as modified.

## I. BACKGROUND

Richard K. Davidson and Marsha C. Davidson were married on June 5, 1993.

Prior to the marriage, Marsha was employed by Security Benefit Group in Topeka, Kansas, where she earned approximately $45,000 per year, plus benefits. At the time of the marriage, Marsha had a bachelor's degree in English education and a master's degree in curriculum and education, and had finished the bulk of the classwork for an additional master's degree and her coursework on a Ph.D. She completed her Ph.D. in adult education during the marriage.

Marsha left her career in Topeka so that she could live in Omaha, Nebraska, with Richard. This was Marsha's third marriage. She had a 17-year-old child from one of her prior marriages who accompanied her to Omaha to live with Richard.

Marsha did not work outside the home during the marriage. She did, however, expend time and energy in community service. Although Richard testified that Union Pacific did not require his wife to devote time and effort to community activities, he did testify that he felt a personal obligation to give something to the Omaha community and that Marsha had helped him to fulfill that perceived obligation.

Richard's previous marriage, which lasted 19 years, ended in November 1992. Two children were born to that marriage, both living with their natural mother during this marriage. At trial, one child was in college, and the other was a senior in high school.

Richard was employed by the Union Pacific throughout his marriage to Marsha. Richard's career in the railroad industry began in 1960 with the Missouri Pacific Railroad, where he was

employed as a brakeman. By 1982, when the Missouri Pacific Railroad was purchased by the Union Pacific, Richard was acting as the Union Pacific's vice president of operations. Two years later, Richard was promoted to executive vice president of operations of the Union Pacific Railroad (Railroad), and in 1991, he became the Railroad's president. Within a matter of weeks, Richard became the Railroad's chairman, while retaining his position as president.

Richard's achievements continued during his marriage to Marsha. In 1994, approximately 1 year into the marriage, Richard was named president of the Union Pacific Corporation (Corporation). The Corporation is the parent company of the Railroad. Where the record is unclear as to this distinction, the term "Union Pacific" will be used. Finally, in 1995, Richard was promoted to chief operating officer of the Corporation. Richard held that position at the time of trial and testified that he expected to become chairman of the Corporation by the end of the year.

Problems arose during the marriage, and by June 1, 1995, the parties had separated. Richard filed a petition for dissolution on June 29, and a trial was held on May 7, 8, and 24, 1996. The primary point of contention at trial was the marital estate; specifically, the value of the marital estate and each party's contribution thereto. Richard's accountants prepared two financial statements concerning Richard's assets. The first financial statement was calculated as of May 31, 1993, immediately prior to the marriage. The second statement was calculated as of December 31, 1995, after the parties' separation but approximately 4 months prior to the trial. Rather than identify and value each asset, the trial court relied on Richard's financial statements to calculate the value of the marital estate. The trial court determined that the increase in Richard's net worth between May 31, 1993, and December 31, 1995, was the value of the marital estate.

During the relevant period, Richard's taxable income was $4,051,854 in 1993; $1,578,435 in 1994; and no taxable income in 1995 because of a loss carryover from a farming operation. A large portion of Richard's compensation during those years was composed of employee stock options and stock retention shares.

Stock retention shares are stock shares that are unvested when granted but will vest at some predetermined point in time. In the instant case, Richard's unvested retention shares would vest only if Richard remained employed with Union Pacific until a certain point in time.

An employee stock option is an employee's contractual right to purchase an employer's stock during a specified period at a predetermined price. An employee stock option may be vested and matured, vested and unmatured, or unvested. If the employee has an absolute right to exercise the option immediately, the option is vested and matured. If the employee cannot exercise the option until some future date, but the employee has an absolute right to exercise the option on that date, the option is vested and unmatured. If the option cannot be exercised until some future date and the option is subject to divestment, the option is unvested.

Richard had received stock options and stock retention shares from the Corporation since 1983. At the time of trial, Richard had both vested and matured and unvested stock options, and unvested stock retention shares. Robert Knight, a director of compensation and human resource information systems for the Corporation, testified that Union Pacific's employee stock options program was designed to recognize and reward past performance and to create an incentive for future contribution to the organization. According to the Corporation's proxy statement, stock retention shares were granted to retain executives, provide incentive for long-term performance, and create shareholder value. Knight testified that Richard's stock retention shares were indeed designed to retain Richard through a predetermined point in time. The estimated effective income tax rate of the employee stock options was 43 percent, and the rate of the retention shares was 32 percent, assuming they were sold as of December 31, 1995.

The trial court determined that Richard's unvested stock options and retention shares should not be included in the marital estate because they were too difficult to value. This finding necessitated an adjustment to Richard's May 31, 1993, financial statement because that statement included some unvested options in its calculations. The trial court adopted a procedure

called the Black/Sholes valuation method to value the remaining options because that method was used by Richard's accountants, by Union Pacific, and by Marsha's expert witness.

After valuing the marital estate at $5,280,010, the court divided that amount, giving two-thirds to Richard and one-third to Marsha. The trial court made this division, stating that Marsha had interrupted her career and provided domestic support during the marriage. This division resulted in a cash award to Marsha of $1,718,643, which was to be paid within 180 days, less certain credits. The trial court also awarded Marsha $5,000 per month in alimony for a period of 6 months, $52,079 in attorney fees, and $9,586 in expert witness fees. In addition, the trial court awarded Marsha $7,500 a month in temporary maintenance during the appeal.

## II. ASSIGNMENTS OF ERROR

Restated, Richard's assignments of error assert that the trial court erred in (1) determining that the marital estate's value was approximately $5.3 million, (2) awarding Marsha one-third of the marital estate, (3) not providing Richard with certain credits, and (4) awarding Marsha attorney fees and costs.

On cross-appeal, Marsha asserts that the trial court erred in (1) failing to include certain unvested stock options and retention stock in the marital estate, (2) giving Richard a certain credit, and (3) valuing the assets of the marital estate as of December 31, 1995.

## III. SCOPE OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996).

## IV. ANALYSIS

The parties dispute the trial court's determination as to the extent, value, and division of the marital estate, as well as certain credits and attorney fees. Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate

court is empowered to enter the order which should have been made as reflected by the record. *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). In the instant case, the record is sufficient to support our entry of the appropriate order.

## 1. EXTENT OF MARITAL ESTATE

We have long held that the marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. See, e.g., *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Thus, to determine whether the unvested employee stock options and stock retention shares are part of the marital estate, we must determine whether they are property, whether they were accumulated and acquired during the marriage, and whether they are the result of the joint efforts of the parties.

This court has not addressed whether unvested employee stock options and stock retention shares accumulated and acquired during the marriage through the joint efforts of the parties constitute marital property. Other jurisdictions have held that employee stock options and stock retention shares are a form of deferred compensation. See, e.g., *Klingenberg v. Klingenberg*, 342 Md. 315, 675 A.2d 551 (1996); *Hann v. Hann*, 655 N.E.2d 566 (Ind. App. 1995); *Green v. Green*, 64 Md. App. 122, 494 A.2d 721 (1985). In Nebraska, deferred compensation is property for purposes of determining the marital estate. Neb. Rev. Stat. § 42-366(8) (Reissue 1993). See, also, *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981). We conclude that unvested employee stock options and stock retention shares constitute marital property when accumulated and acquired during the marriage through the joint efforts of the parties.

## 2. JOINT EFFORTS OF PARTIES

Richard asserts that the employee stock options and retention shares at issue were obtained as a result of his sole effort and, thus, were not accumulated and acquired through the joint efforts of the parties.

As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule. See, *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985);

*Cady v. Cady*, 224 Kan. 339, 581 P.2d 358 (1978). Such exceptions include property accumulated and acquired through gift or inheritance, *Reichert v. Reichert, supra*, or property held in trust by a third person, *Essex v. Essex*, 195 Neb. 385, 238 N.W.2d 235 (1976). Property obtained through one or both spouses' employment, however, is not such an exception. See, *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980); *Shomaker v. Shomaker*, 166 Neb. 164, 88 N.W.2d 221 (1958) (including stock options in marital estate without discussing whether they were vested or unvested). We conclude that to the extent Richard's unvested employee stock options and stock retention shares were accumulated and acquired during the marriage, they were accumulated and acquired through the joint efforts of the parties. See, *Pascale v. Pascale*, 140 N.J. 583, 660 A.2d 485 (1995); *Smith v. Smith*, 682 S.W.2d 834 (Mo. App. 1984) (holding that employee stock options were " 'created by the joint effort of the spouses' ").

### 3. WHEN ACCUMULATED AND ACQUIRED

This court has never determined the issue of whether and to what extent stock options and retention shares are accumulated and acquired during the marriage. Other jurisdictions' approaches are instructive.

In *Smith v. Smith, supra*, the court held that unvested employee stock options granted during the marriage should be included within the marital estate. See, also, *Green v. Green, supra*. The court distinguished employee stock options from pensions, stating that "[an employee stock option] has already been earned, while a pension is earned over the whole period of the worker's employment." *Smith v. Smith*, 682 S.W.2d at 837. Implicit in this holding is the court's assumption that employee stock options are earned in their entirety when granted.

However, most courts recognize that employee stock options may be granted for past, present, or future services, or some combination thereof, depending on the circumstances surrounding the options' grant. E.g., *In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676 (1984). In *Hall v. Hall*, 88 N.C. App. 297, 307, 363 S.E.2d 189, 196 (1987), the court held that unvested employee stock options are not part of the marital estate, stating that

> this rule more closely recognizes the purpose of stock options granted an employee which are designed so that they vest and become exercisable over a period of time; such options represent both compensation for the employee's past services and incentives for the employee to continue in his employment in the future.

Were *Hall* to have included the unvested employee stock options in the marital estate in their entirety, such as in *Smith*, that portion of the options which represented compensation for services performed prior to the marriage or subsequent to the dissolution would have been erroneously included within the marital estate. However, by excluding the unvested employee stock options in their entirety, that portion of the options which represented compensation earned for past or future services performed during the marriage was erroneously excluded from the marital estate. See *In re Marriage of Hug, supra.*

Most courts faced with the issue of when stock options and retention stock are accumulated and acquired look to whether and to what extent the unvested employee stock options at issue were granted for past, present, or future services and then determine what percentage thereof was earned during the marriage and what percentage was earned prior to the marriage and/or subsequent to its dissolution. See, *DeJesus v. DeJesus*, 90 N.Y.2d 643, 687 N.E.2d 1319 (1997); *Powell and Powell*, 147 Or. App. 17, 934 P.2d 612 (1997); *In re Marriage of Miller*, 915 P.2d 1314 (Colo. 1996); *Garcia v. Mayer*, 122 N.M. 57, 920 P.2d 522 (1996); *In re Marriage of Short*, 125 Wash. 2d 865, 890 P.2d 12 (1995); *In re Marriage of Walker*, 216 Cal. App. 3d 644, 265 Cal. Rptr. 32 (1989). This approach is commonly referred to as the time rule.

We are persuaded that those jurisdictions applying the time rule are the most consistent with Nebraska law concerning when property is accumulated and acquired for purposes of determining the marital estate. See *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). We conclude that the time rule generally applies to stock options and retention stock. While it is true that other jurisdictions have held that stock retention shares are accumulated and acquired in their entirety when granted, see *In re Marriage of Miller, supra*, we see no

reason to distinguish between employee stock options and retention shares. See *DeJesus v. DeJesus, supra* (treating stock options and retention shares alike).

In the instant case, the trial court did not attempt to determine whether and to what extent Richard's unvested employee stock options or retention shares were granted for past, present, or future services. Therefore, we conclude that the trial court abused its discretion in excluding the unvested employee stock options in their entirety.

As we have determined that the time rule applies to employee stock options and retention shares in dissolution actions, the question is, In applying the time rule, what stock options and retention shares are included within the marital estate? In applying the time rule, it is incumbent upon the trial court to calculate whether and to what extent the options were granted as compensation for past, present, or future services. Then the trial court should determine what percentage of each portion thereof was accumulated and acquired during the marriage.

To determine which percentage represents compensation for past, present, and future services, "[n]either the language of the [employee stock option or stock retention share] agreement itself nor the testimony of the employer is dispositive." Thomas P. Malone, *Employee Stock Options and Restricted Shares: Determining And Dividing the Marital Pot*, 25 Colo. Law. 87 at 90 (1996). Relevant, nonexhaustive considerations include whether the employee stock options or stock retention shares were intended to (1) secure optimal tax treatment, (2) induce the employee to accept employment, (3) induce the employee to remain with the employer, (4) induce the employee to leave his or her employment, (5) reward the employee for completing a specific project or attaining a particular goal, and (6) be granted on a regular or irregular basis. These, as well as any other relevant considerations, should be applied by the trial court according to the unique circumstances presented.

Based on Union Pacific's proxy statement and the testimony of Knight, we conclude in the instant case that Richard's stock options were granted to compensate Richard equally for both past and future services and that his retention shares were granted entirely for future services.

## 4. DETERMINING PERCENTAGE EARNED
## DURING MARRIAGE

Once the trial court has determined whether and to what extent the unvested employee stock options or stock retention shares were granted for past, present, or future services, the trial court should determine what percentage of each portion was accumulated and acquired during the marriage. The following formulas or variations thereof should be used by the trial court to make that determination.

If an option or retention share is granted prior to the marriage, that portion of the option or retention share which represents compensation for past services was accumulated and acquired entirely outside the marriage. If, however, an option or retention share is granted during the marriage, the trial court must determine the percentage of compensation for past services accumulated and acquired during the marriage, if any, by creating a fraction. The numerator is the period of time from the beginning of the marriage until the date of the grant, and the denominator is the period of time from the beginning of the employee-spouse's employment until the date of the grant. See *DeJesus v. DeJesus*, 90 N.Y.2d 643, 687 N.E.2d 1319 (1997). Diagrammed, the fraction would look like this:

$$\frac{\text{Married} \quad [\text{Date}] \quad \text{to} \quad \text{Grant} \quad [\text{Date/\# Days}]}{\text{Employed} \quad [\text{Date}] \quad \text{to} \quad \text{Grant} \quad [\text{Date/\# Days}]} = \% \text{ Past Service}$$

It should be noted that if the employee-spouse's employment began after the parties were married, that portion of the option or retention share which represents compensation for past services was accumulated and acquired entirely within the marriage.

To determine the percentage of compensation for future services, if any, when the option or retention share is granted prior to the marriage but vests during the marriage, the trial court should create a fraction. The numerator is the period of time from the beginning of the marriage until the stock option or retention share vests, and the denominator is the period of time from the date of the grant until the employee stock option or retention share vests. Diagrammed, the fraction looks like this:

$$\frac{\text{Married} \quad [\text{Date}] \quad \text{to} \quad \text{Vested} \quad [\text{Date/\# Days}]}{\text{Granted} \quad [\text{Date}] \quad \text{to} \quad \text{Vested} \quad [\text{Date/\# Days}]} = \% \text{ Future Services}$$

If the option or retention share is granted during the marriage and vests during the marriage, that portion of the option or retention share which represents compensation for future services, if any, was accumulated and acquired entirely during the marriage. If, however, the option or retention share is granted during the marriage and will vest sometime after dissolution, the percentage of future services, if any, is determined by a fraction. The numerator is the period of time from the date of the grant until dissolution, and the denominator is the period of time from the date of the grant until the employee stock option vests. *DeJesus v. DeJesus, supra.* Diagrammed, the fraction looks like this:

$$\frac{\text{Granted [Date] to Dissolved [Date/\# Days]}}{\text{Granted [Date] to Vested [Date/\# Days]}} = \% \text{ Future Services}$$

Finally, any option/retention share or portion thereof which is granted during the marriage and determined to be compensation for present services is accumulated and acquired in its entirety when granted. *In re Marriage of Short*, 125 Wash. 2d 865, 890 P.2d 12 (1995).

Pursuant to our de novo review, we now apply the above fractions to the stock options and retention shares. We emphasize that although the trial courts should apply some fraction to determine to what extent the employee stock options or stock retention shares were earned during the marriage, the trial courts are not limited to any specific application of the time rule. *In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676 (1984). Rather, the trial courts should tailor such a determination to the unique facts of each case. *Powell and Powell*, 147 Or. App. 17, 934 P.2d 612 (1997).

In the instant case, we conclude that there is no need to adjust the typical fractions applicable to future compensation; however, adjustments should be made to the fractions concerning past compensation. The period during which Richard's past services were performed must be limited to the time elapsed from the last date upon which an option was granted to Richard until the date upon which the option at issue was granted. Had the Corporation intended to compensate Richard for services rendered prior to the date upon which the previous option was granted, Union Pacific would have simply awarded more

employee stock options to Richard at that time. In our adjusted past services fraction, the numerator is the period of time from the date the last employee stock options were granted or the beginning of the marriage, whichever is later, until the date of the grant. The denominator is the period of time from the date the last employee stock options were granted, until the date of the grant. Diagrammed, the fraction looks like this:

$$\frac{\text{Married [Date] to Granted [Date/\# Days]}}{\text{Last Granted/Employed Last [Date] to Granted [Date/\# Days]}} = \% \text{ Past Service}$$

The percentage of each block of stock options and stock retention shares granted for past services and the percentage granted for future services are set forth in the appendix to this opinion.

### 5. VALUE OF MARITAL ESTATE

Marsha argues that the trial court erred in valuing the marital estate as of December 31, 1995, rather than as of the time of trial. In *Else v. Else*, 5 Neb. App. 319, 558 N.W.2d 594 (1997), the Nebraska Court of Appeals held that valuations of certain marital property that were calculated 1 week before trial bore a rational relationship to the property to be divided upon dissolution. Considering the complexity of the financial information involved in this case, the valuation of Richard's December 31, 1995, financial statement is certainly rationally related to the property composing the marital estate. Therefore, we conclude that the trial court did not abuse its discretion in valuing the marital estate as of December 31, 1995. See, also, *Everett v Everett*, 195 Mich. App. 50, 489 N.W.2d 111 (1992) (stating that actual date on which to determine market price of stock options for valuation purposes is within discretion of trial court).

#### (a) Valuing Unvested Stock Options and Retention Shares Earned During Marriage

We recognize that other jurisdictions have employed a variety of methods to value employee stock options and retention shares. In *Green v. Green*, 64 Md. App. 122, 137, 494 A.2d 721, 729 (1985), the court adopted an " 'if, as and when' " method of

valuing unexercised options. Under the if, as, and when method, the nonemployee spouse does not receive his or her share of the marital estate composed of the unvested or vested but unexercised stock options until those options are actually exercised. *Id*. See, also, *In re Marriage of Frederick*, 218 Ill. App. 3d 533, 578 N.E.2d 612 (1991); *Smith v. Smith*, 682 S.W.2d 834 (Mo. App. 1984). At least one court has used a variation of the if, as, and when method by imposing a constructive trust on the employee stock options, with the employee-spouse acting as trustee for the benefit of the nonemployee spouse. *Callahan v. Callahan*, 142 N.J. Super. 325, 361 A.2d 561 (1976). Finally, some courts use the intrinsic value method, which is the market value of the stock, less the exercise cost of the option and any applicable financing costs. Under this method, the options are valued at the time of dissolution and the nonemployee spouse receives his or her share either immediately or in installments. *Wendt v. Wendt*, No. FA 960149562S, 1997 WL 752374 (Conn. Super. Dec. 3, 1997); *In re Marriage of Hug*, 154 Cal. App. 3d 780, 201 Cal. Rptr. 676 (1984).

In the instant case, the trial court valued the employee stock options using the Black/Sholes method, which is a mathematical formula used to value stock options. This method takes into account the option price, the term of the option, the market value of the underlying security, a risk-free rate of return, and the underlying volatility of the stock option, in order to come up with a present value for the options at issue. Richard asserts that the trial court erred by applying the Black/Sholes option pricing method rather than the intrinsic value method. We note, however, that Richard's own accountants used the Black/Sholes option pricing method to value Richard's employee stock options on his financial statements. Likewise, the Corporation used the Black/Sholes option pricing method to value Richard's shares in its 1996 proxy statement. Therefore, we conclude that the trial court did not abuse its discretion in this instance by using the Black/Sholes option pricing method to value Richard's employee stock options.

### (b) Black/Sholes Valuation Method

The next step in our de novo review is to determine the value of the unvested options and retention shares that constitute mar-

ital property. To do so, we multiply the difference between the options' exercise price and present value by the number of shares at issue, and then multiply the product thereof by the sum of the past percentage and the future percentage divided by 2. The product thereof represents the pretax value of the stock options to the marital estate, which should be adjusted to reflect the posttax value. Diagrammed, the equation looks like this:

(Black/Sholes - Option Price × # shares) (Past % + Future % /2) × (100% - Effective Tax Rate %) = Estate Value

We use a similar equation for the stock retention shares, simply omitting the option price and past percentage.

The valuation calculations are set forth in the appendix to this opinion. Those calculations indicate that the total value of Richard's employee stock options and stock retention shares attributable to the marital estate is $5,655,974. According to the method of calculation used by the trial court, and a comparison of the financial statements prepared by Richard's accountants, the remaining portion of the marital estate is $2,230,145. Added together, we conclude that the value of the marital estate is $7,886,119.

### 6. DIVISION OF MARITAL ESTATE

In dividing property and determining alimony, a court should consider four factors: (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party, *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994), the polestar being fairness and reasonableness as determined by the facts of each case, *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996).

In the instant case, Marsha and Richard separated after 2 years and were married for only 38 months. Richard's 33-year career in the railroad industry had reached its zenith at the time the parties were married. Richard was already president of the Railroad and had received stock option grants every year since 1983. It is true that Richard was promoted to chairman of the

Railroad and then to president of the Corporation during the marriage and that he was awarded significant grants of stock options and retention shares. However, the record reflects that Richard had steadily climbed the corporate ladder and was well positioned to attain these promotions before he married Marsha. Most importantly, the bulk of the marital estate consists of stock options and retention shares that were earned as a result of those promotions.

We are aware that Marsha assisted Richard with his employee-related responsibilities by providing social support and that she tutored Richard's college-age son. Furthermore, although Marsha completed her Ph.D. during the marriage, she interrupted a successful career to marry Richard. These contributions to the marriage are relevant and must be taken into consideration. See *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980). However, we also note that no children were born to the marriage and that Richard's children did not reside permanently in Richard and Marsha's home during the marriage.

Considering that no children were born to the parties, that the parties separated after 2 years, that the marriage lasted 38 months, that Richard's career was well established, and that Marsha is highly educated and capable of finding employment, we conclude that the trial court's adherence to the general guidelines was an abuse of discretion.

We determine Marsha is entitled to $950,000, less a credit of $145,789, which is the value of the Lexus and Mustang automobiles ($41,013), the jewelry ($49,515), the personal property retained by Marsha ($15,261), the payment to prepare the premarital home for sale ($15,000), and the $25,000 cash payment that was to be made immediately upon entry of the trial court's decree. That amount shall be paid in cash within 45 days of the release of this opinion.

## 7. CREDITS

Richard argues that the trial court erred in not ordering the $7,500 monthly payment Richard must make to Marsha during the pendency of this appeal be credited against Marsha's share of the marital estate. Although the trial court did not expressly state that the $7,500 payments be credited against Richard's total liability, we assume that the trial court intended its order to

be in conformity with the law. The law is clear in this state that alimony payments paid during the pendency of an appeal must be credited toward the payor's other alimony and property division payments. See *Isenberger v. Isenberger*, 239 Neb. 706, 477 N.W.2d 927 (1991). Thus, we conclude that the $7,500 payments shall be credited toward Richard's obligations in addition to those credits already awarded.

On cross-appeal, Marsha asserts that the trial court erred in giving Richard a credit for voluntary payments he made to Marsha during the pendency of the proceedings below. The record reflects that a substantial number of these payments were made to maintain the family home, which was ultimately awarded to Richard. Richard should not receive a credit for maintaining his own assets. We conclude that the trial court abused its discretion in giving a credit for Richard's voluntary payments as reflected in exhibit 61.

## 8. ATTORNEY FEES

The award of attorney fees in a dissolution action involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996). The trial court did not abuse its discretion in awarding attorney fees and expert witness fees to Marsha.

## V. CONCLUSION

We are aware that the portion of the marital estate awarded to Marsha is less than the one-third to one-half guideline of the general rule. However, under the unique circumstances of the instant case, we are satisfied that Marsha's award is fair and reasonable. Richard shall pay Marsha $950,000, less those credits awarded in this opinion, within 45 days of this opinion's release. In all other respects, the trial court's decree is affirmed.

AFFIRMED AS MODIFIED.

**APPENDIX**

EMPLOYEE STOCK OPTIONS

| BLOCK ONE | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 40,000 | 09/24/92 | 09/24/93 | $54.13 | $74.83 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely outside the marriage.[1] | | | | | | |
| Future | Married 06/05/93 to Vested 09/24/93 | | | | | = 30.25% | |
| | Granted 09/24/92 to Vested 09/24/93 | | | | | | |
| Value | ($74.83 - $54.13 x 40,000) (0% + 30.25% / 2) x 57% | | | | | = $71,408 | |

| BLOCK TWO | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 40,000 | 11/18/93 | 11/18/94 | $63.75 | $81.42 | 06/05/93 | 08/29/96 | 43% |
| Past | Married 06/05/93 to Granted 11/18/93 | | | | | = 39.35% | |
| | Prior Grant 09/24/92 to Granted 11/18/93 | | | | | | |
| Future | Accumulated and acquired entirely within the marriage.[2] | | | | | | |
| Value | ($81.42 - $63.75 x 40,000) (39.35% + 100% / 2) x 57% | | | | | = $280,724 | |

| BLOCK THREE | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 56,250 | 12/15/94 | 12/15/95 | $47.00 | $72.36 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely within the marriage.[3] | | | | | | |
| Future | Accumulated and acquired entirely within the marriage.[2] | | | | | | |
| Value | ($72.36 - $47.00 x 56,250) (100% + 100% /2 ) x 57% | | | | | = $813,105 | |

| BLOCK FOUR | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 56,250 | 12/15/94 | 12/15/96 | $47.00 | $72.36 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely within the marriage.[3] | | | | | | |
| Future | Granted 12/15/94 to Dissolved 08/29/96 | | | | | | = 82.25% |
| | Granted 12/15/94 to Vested 12/15/96 | | | | | | |
| Value | ($72.36 - $47.00 x 56,250) (100% + 82.25% / 2) x 57%   = $740,983 | | | | | | |

| BLOCK FIVE | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 56,250 | 12/15/94 | 12/15/97 | $47.00 | $72.36 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely within the marriage.[3] | | | | | | |
| Future | Granted 12/15/94 to Dissolved 08/29/96 | | | | | | = 56.83% |
| | Granted 12/15/94 to Vested 12/15/97 | | | | | | |
| Value | ($72.36 - $47.00 x 56,250) (100% + 56.83% / 2) x 57%   = $608,365 | | | | | | |

| BLOCK SIX | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 43,750 | 11/30/95 | 11/30/96 | $67.94 | $85.89 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely within the marriage.[3] | | | | | | |
| Future | Granted 11/30/95 to Dissolved 08/29/96 | | | | | | = 74.50% |
| | Granted 11/30/95 to Vested 11/30/96 | | | | | | |
| Value | ($85.89 - $67.94 x 43,750) (100% + 74.50% / 2) x 57%   = $390,556 | | | | | | |

| BLOCK SEVEN | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Option Price | Black/ Sholes | Married | Dissolved | Taxed |
| 43,750 | 11/30/95 | 11/30/97 | $67.94 | $85.89 | 06/05/93 | 08/29/96 | 43% |
| Past | Accumulated and acquired entirely within the marriage.[3] | | | | | | |
| Future | Granted 11/30/95 to Dissolved 08/29/96 | | | | | | = 37.25% |
| | Granted 11/30/95 to Vested 11/30/97 | | | | | | |
| Value | ($85.89 - $67.94 x 43,750) (100% + 37.25% / 2) x 57% | | | | | | = $307,207 |

| OPTIONS TOTAL VALUE | = $3,212,348 |
|---|---|

## STOCK RETENTION SHARES

| BLOCK ONE | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed | |
| 10,000 | 09/27/90 | 12/15/93 | $66.00 | 06/05/93 | 08/29/96 | 32% | |
| Future | Married 06/05/93 to Vested 12/15/93 | | | | | | = 16.36% |
| | Granted 09/27/90 to Vested 12/15/93 | | | | | | |
| Value | $66.00 x 10,000 x 16.36% x 68% | | | | | | = $73,424 |

| BLOCK TWO | | | | | | | |
|---|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed | |
| 20,000 | 09/26/91 | 12/15/93 | $66.00 | 06/05/93 | 08/29/96 | 32% | |
| Future | Married 06/05/93 to Vested 12/15/93 | | | | | | = 23.37% |
| | Granted 09/26/91 to Vested 12/15/93 | | | | | | |
| Value | $66.00 x 20,000 x 23.37% x 68% | | | | | | = $209,769 |

| BLOCK THREE | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 10,000 | 11/18/93 | 10/31/96 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 11/18/93 | to | Dissolved | 08/29/96 | = 94.18% |
|---|---|---|---|---|---|---|
| | Granted | 11/18/93 | to | Vested | 10/31/96 | |
| Value | $66.00 x 10,000 x 94.18% x 68% | | | | | = $422,680 |

| BLOCK FOUR | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 20,000 | 11/18/93 | 10/31/97 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 11/18/93 | to | Dissolved | 08/29/96 | = 70.34% |
|---|---|---|---|---|---|---|
| | Granted | 11/18/93 | to | Vested | 10/31/97 | |
| Value | $66.00 x 20,000 x 70.34% x 68% | | | | | = $631,372 |

| BLOCK FIVE | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 10,000 | 11/18/93 | 10/31/98 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 11/18/93 | to | Dissolved | 08/29/96 | = 56.13% |
|---|---|---|---|---|---|---|
| | Granted | 11/18/93 | to | Vested | 10/31/98 | |
| Value | $66.00 x 10,000 x 56.13% x 68% | | | | | = $251,911 |

| BLOCK SIX | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 20,000 | 12/15/94 | 12/15/97 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 12/15/94 | to | Dissolved | 08/29/96 | = 56.83% |
|---|---|---|---|---|---|---|
| | Granted | 12/15/94 | to | Vested | 12/15/97 | |
| Value | $66.00 x 20,000 x 56.83% x 68% | | | | | = $510,106 |

| BLOCK SEVEN | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 10,000 | 12/15/94 | 12/15/98 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 12/15/94 | to | Dissolved | 08/29/96 | ≈ 42.63% |
|---|---|---|---|---|---|---|
| | Granted | 12/15/94 | to | Vested | 12/15/98 | |
| Value | $66.00 x 10,000 x 42.63% x 68% | | | | | ≈ $191,323 |

| BLOCK EIGHT | | | | | | |
|---|---|---|---|---|---|---|
| # Shares | Granted | Vested | Share Price | Married | Dissolved | Taxed |
| 10,000 | 12/15/94 | 12/15/99 | $66.00 | 06/05/93 | 08/29/96 | 32% |

| Future | Granted | 12/15/94 | to | Dissolved | 08/29/96 | ≈ 34.10% |
|---|---|---|---|---|---|---|
| | Granted | 12/15/94 | to | Vested | 12/15/99 | |
| Value | $66.00 x 10,000 x 34.10% x 68% | | | | | ≈ $153,041 |

| RETENTION SHARES TOTAL VALUE | ≈ $2,443,626 |
|---|---|

| OPTIONS & RETENTION SHARES TOTAL VALUE | = $5,655,974 |
|---|---|

1. The percentage that represents compensation for past services was accumulated and acquired entirely outside the marriage because the options were granted prior to the marriage.

2. The percentage that represents compensation for future services was accumulated and acquired entirely within the marriage because the options were granted and vested during the marriage.

3. The percentage that represents compensation for past services was accumulated and acquired entirely within the marriage because the prior options were granted during the marriage and the options at issue vested during the marriage.