IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

POEHLING V. POEHLING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JONI POEHLING, APPELLANT,

V.

PATRICK POEHLING, APPELLEE.

Filed October 27, 2020.    No. A-19-985.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed as modified.

Leta F. Fornoff for appellant.

Linsey Moran Bryant and Brad Holtorf, of Sidner Law, for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Joni Poehling appeals from the order of the district court for Saunders County dissolving her marriage to Patrick Poehling. On appeal, she argues that the district court erred in valuing and dividing the marital estate and in failing to award her alimony and attorney fees. For the reasons that follow, we affirm the district court's order as modified.

## II. BACKGROUND

Joni and Patrick were married on November 4, 1989. The parties had four children during the marriage, all of whom reached the age of majority by the time of trial. Joni filed a complaint for legal separation on April 13, 2017. In her complaint, Joni sought temporary and final attorney fees, temporary and permanent custody of their then minor child, child support, and an equitable

- 1 -

division of their assets and debts. On August 11, 2017, Patrick filed an answer and cross-complaint for dissolution of marriage. Trial was held on May 31, 2019.

Joni, age 55 at the time of trial, testified that she worked as a legal secretary from before she married Patrick until giving birth to their first child. She worked a few part-time jobs while raising their children and then began working full time for Fremont Middle School in approximately 2017. She testified that she earned $33,478 in 2018. Joni said that she expected to work there until she retired.

Joni testified that Patrick's father made numerous gifts to him throughout their marriage, some of which he kept separate from their other assets. She conceded that Patrick received real estate including a river island, duck blind, and riverbank area as gifts from his father and that they were nonmarital assets. Joni testified that she had also received cash gifts from her family totaling approximately $50,000 during the marriage but acknowledged that she had comingled those gifts with their marital assets.

In 2005, Patrick J. Poehling, LLC, purchased approximately 45 acres of land from Patrick's father, on which Joni and Patrick built a home. Joni testified that they purchased the land using marital funds, specifically from their investments and personal checking account. She said that they used their joint checking account to pay the taxes and insurance on the home each year. In 2016, they had a survey completed and sold their home and 5 acres immediately surrounding it. They separately sold the remaining 40 acres to Lane Goebel for $215,600.

Patrick testified that his father developed lakeside recreational property in Saunders County called Woodcliff. When Patrick obtained his broker's license in 1987, he took over the real estate company, Woodcliff Properties, Inc. He said that his father "basically . . . gifted the lots" to his brother, himself, and Patrick, so that each of them had a one-third interest in the lots. Patrick predominantly sold properties related to Woodcliff but also sold a few houses outside Woodcliff. His father and brother incorporated Woodcliff II, and Patrick was in charge of road grading, lake maintenance, lake management, security, and lot development for that entity.

Joni testified that Patrick "sold a lot of homes" and that "it was really good in the '90s" before beginning to taper off around 2003 or 2004. She said that she assisted Patrick in his real estate work by, for example, taking photos and creating sales brochures, making deposits, preparing documents, and transferring papers to the title office. Joni said that she was not paid for that work. She estimated that Patrick was making $150,000 to $200,000 per year when he was selling homes as a real estate broker and realtor. Joni said that the proceeds from the sale of lots that Patrick was gifted by his father was deposited into their joint account and that she never heard him describe that account as being solely his until after she began legal proceedings. The parties agreed that when a lot was sold, Patrick would receive a 6 percent sales commission on the sale price of any house located on a lot, a 10 percent sales commission on the price of the lot, and then his one-third share of the remaining proceeds from the sale of the lot. Patrick acknowledged that his sales commissions were marital. However, he contended that his share of the proceeds from the lots was not. Patrick acknowledged however that he had no documentation to show that the proceeds from the Woodcliff lots were placed into an account that was separate from marital funds.

In approximately 2009, the lake property was fully developed, and Patrick told his father that he wanted to enter a different line of work. At the time of trial, Patrick was earning $42,000

per year working at Midwest Floor Coverings. He also received rental income of approximately $1,100 per month from an apartment located on a lot he owns.

Joni testified that in approximately 2008, after Patrick had decided to stop selling real estate, they invested $650,000 in gas stock. She said that Patrick had invested "some of our money." Patrick testified that for 4 or 5 years, they were making 4.5 to 5 percent on the investment, but then the company began operating at a loss. Joni said that the investment "did not do well" and that she did not know its value at the time of trial. On direct examination, Joni's counsel asked her, "You're fine with [Patrick] taking that gas stock free and clear from you?" She replied, "Oh, yes. He can have the gas stock."

Patrick testified that he purchased the gas stock from funds held in "a couple different brokerage accounts," including one account that held the money he received from selling lots and another account that held Joni and his joint funds. Patrick testified that for approximately the last 5 years, they had used the gas stock's operating loss to offset their taxable income. Patrick also did not provide any numerical estimate of the stock's value at the time of trial.

Joni testified that there was an apartment at Woodcliff, which Patrick built on a lot gifted to him by his father. She recognized the lot as nonmarital property and valued it at $25,000. She valued the apartment alone at $175,000, which resulted in an overall combined value to the apartment and land of $200,000.

Patrick testified that the value of the apartment alone was $140,000 and that the value of the land on which it sat, Tract 7, was $35,000 for a total value of $175,000. He said that Joni had agreed that the value of the land should be set off as nonmarital property because he received it as a gift. Patrick said that he would accept Joni's proposed $200,000 valuation for the apartment less some value for the land that he had received by gift.

Joni had a retirement account through her employment with Fremont schools which carried a value of $20,557.72. During trial, Patrick's counsel acknowledged an error in exhibit 47 which listed the value of the account as $22,557.72. However, in its order, the district court listed the account with the incorrect value.

Joni testified that Patrick had paid $44,000 in premiums on a life insurance policy on his father, which named his brother and him as beneficiaries. She said that Patrick told her that the premiums were paid from their joint account, and produced a copy of a check reflecting that. When Patrick and his brother decided to cash out the policy, Joni said that he received $73,000. She requested that she be reimbursed for half of the premiums that were paid, which she estimated lasted from approximately 2000 through March 2017. Patrick testified that the money they received from cashing out the policy had been spent on a fishing boat, kids' college tuition expenses, apartment repairs, and automobile repairs.

Joni testified that she had withdrawn money from her savings account and put it into their joint checking account in order to pay her attorney fees when she first separated from Patrick. She said that Patrick took money out of the joint checking account to pay his attorney fees as well.

On July 16, 2019, the district court entered its decree for dissolution of marriage. The court first outlined which assets it believed the parties had agreed were part of their marital estate and which assets they agreed were nonmarital property, including the gas stock. It then set forth five items of disputed property and valued each:

| | |
|---|---|
| (1) Ameritrade Account ending in 8474 | $733,382.84 |
| (2) Home (Funds used from Ameritrade Account) | $360,000 |
| (3) Apartment Lot (Tract 7) | $25,000 or $35,000 |
| (4) Sale Proceeds (Land Sold to Goebel) | $212,373.17 |
| (5) Razor (sale proceeds from sale of easement) | $10,000 |

As relevant in this appeal, the court concluded that the disputed Ameritrade account, which held funds received from selling the lots that Patrick had received from his father, was a marital asset. The court said there was not sufficient evidence adduced at trial regarding the lots' sales. The court noted that no documentation of the amounts of the transactions was offered, therefore making it impossible to determine the amount of the proceeds that would constitute Patrick's one-third gifted share. The court further found that the evidence showed that Patrick had comingled the proceeds with marital funds from the very beginning. Moreover, the court found that Joni and Patrick had treated the account as a marital asset with Joni having full access and the ability to withdraw and deposit funds and with Patrick depositing his income earned during the marriage into the account as well. The court held that Patrick had failed to meet his burden to show that the account was a nonmarital asset.

With regard to the apartment, the court found that the parties agreed as to its $200,000 valuation but disagreed as to what portion of that value was attributable to the lot that Patrick received from his father. The court considered the parties' testimony that the lot was worth either $25,000 or $35,000, and determined that the lot's value was $30,000. The $360,000 taken from the Ameritrade account and used to purchase Patrick's home and the proceeds of the sale of the 40 acres to Goebel were also found to be marital assets. The court found that the Razor was a gift from Patrick to Joni. As such, the Razor was awarded to Joni as a nonmarital asset.

In dividing the marital estate, the court held that it "must recognize that a significant portion of the assets of the marriage are attributable to the gifts made from [Patrick's father] to Patrick Poehling during the marriage." Therefore, the court said that equity required dividing the marital estate to award approximately two-thirds to Patrick and one-third to Joni. This resulted in awarding $1,759,388.59 to Patrick and $887,194.29 to Joni.

The court considered Joni's request for alimony, finding that her request was predicated on the large Ameritrade account being classified as a nonmarital asset but that the court had determined it was a marital asset. "[T]herefore, the court believes that Joni has effectively withdrawn her request for alimony." However, the court went on to state that her request also ought to be denied because the evidence showed that Joni was capable of sustaining herself through her own employment and that the parties' incomes at the time of trial were comparable. Finally, under the subheading "IV. DEBTS AND ATTORNEY FEES," the court made some consideration of attorney fees but only insofar as ordering Patrick to pay an outstanding debt of $1,247 for unrelated legal services that were rendered before the dissolution proceedings ever began. The court did not otherwise address or award attorney fees.

Joni now appeals. Although Patrick contended at trial that a significant amount of the parties' accounts should be awarded to him as a nonmarital asset, he does not contest those findings here.

### III. ASSIGNMENTS OF ERROR

Joni assigns, restated, that the district court erred in its valuation and division of the parties' assets, in failing to award her alimony, and in failing to award her attorney fees.

### IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

### V. ANALYSIS

#### 1. PROPERTY DIVISION

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015). The second step is to value the marital assets and marital liabilities of the parties. *Id*. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Despain v. Despain, supra.* The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Lorenzen v. Lorenzen*, 294 Neb. 204, 883 N.W.2d 292 (2016).

As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018). Such exceptions include property accumulated and acquired through gift or inheritance. *Id*. The burden of proof to show that property is nonmarital remains with the person making the claim. *Id*. As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). For example, in *Finley-Swanson v. Swanson*, 20 Neb. App. 316, 823 N.W.2d 697 (2012), we found no abuse of discretion in a district court's division of the marital estate that awarded 36 percent to the appellant and 64 percent to the appellee.

Joni's argument primarily centers on the district court's decision to award two-thirds of the marital estate to Patrick. However, she also makes several arguments about the valuation of

specific assets. We will address the valuation issues prior to addressing the percentage of assets allocated to each party.

We first address Joni's work-related retirement account. Patrick conceded during trial that his exhibit reflected a typographical error in the value of Joni's retirement account and agreed with her $20,557.72 valuation. Based on our review, we conclude that the district court incorrectly valued the account at $22,557.72 when the uncontroverted evidence at trial showed a lower valuation. As such the line valuing Joni's retirement account is modified to $20,557.72 and the value of the total marital estate should be lowered to $2,644,582.88. Based on our reasoning below, wherein we affirm the district court's decision to award 66.5 percent of the marital estate to Patrick and 33.5 percent to Joni, we find that the following further adjustments should be made. The total monetary award to Joni is adjusted to $885,935.26 and the total monetary award to Patrick is adjusted to $1,758,647.62. To achieve that division, Joni is awarded $89,339.12 from the Ameritrade account ending in 8474. Patrick's share of that account is adjusted downward to $644,043.72.

Next, while the parties agreed that the apartment's total value was $200,000, Joni said that $25,000 of that value was attributable to the land that Patrick received from his father while Patrick valued the land on which the apartment sat at $35,000. The court concluded that the land's value was $30,000. This valuation, an average of the parties' two estimates, does not represent an abuse of the district court's discretion.

Joni next argues that she ought to have received a $22,000 credit for one-half of the life insurance premium payments that were made toward the policy taken out on Patrick's father, which listed Patrick and his brother as beneficiaries. The evidence shows that the policy's premiums were paid with marital funds. But evidence was adduced by Patrick that the cash value received from the policy when it was cashed out was utilized for marital purposes including college tuition and a boat. Accordingly, we find that the district court did not abuse its discretion by failing to allocate a credit to Joni for the value of the life insurance premiums paid.

Finally, we turn to Joni's argument regarding the gas stock and the court's division of the marital estate. Patrick testified that he purchased the gas stock using inherited or gifted funds from his father along with funds from the parties' Ameritrade account, which account the court determined was part of the marital estate. Both parties testified regarding the stock's diminished value at the time of trial but failed to provide a numerical valuation. They said that the company had operated at a loss for a number of years. Joni agreed during trial that Patrick could be awarded the gas stock.

Joni argues in her brief on appeal that the district court erroneously found that the gas stock should be considered a nonmarital asset. While she does not reverse her position taken at trial that Patrick should be awarded the stock, she argues that since the $650,000 investment was made with commingled funds, the loss in value as a result of the investment's poor performance should offset the value of any nonmarital gifts received from Patrick's father. Joni seems to contend that the value of whatever gifts Patrick received from his father and added to their marital estate was wiped out by the diminution in the gas stock's value.

The matter of the gas stock's loss in value is distinct from the issue that Patrick and Joni's marital estate was largely built on gifts that Patrick received from his father. The evidence

demonstrates that the gas stock was purchased using a combination of nonmarital and marital funds, and whatever returns the gas stock initially produced were enjoyed by Patrick and Joni together. The evidence also shows that they received some tax benefits from the losses the investment produced more recently. We see no abuse of discretion in the court's decision not to offset any alleged loss of value in the gas stock against Patrick in deciding how to divide the marital estate. The court was provided no evidence of the present value of the gas stock. Therefore, even if some offset might be justified, a question we need not decide, the court had no evidence which would demonstrate how much the offset should be.

However, our analysis does not stop here. The district court found that the parties agreed that the gas stock was nonmarital property and should be awarded to Patrick. The record does not support that conclusion. While it is true that Joni testified that Patrick could be awarded the gas stock, she did not concede that the gas stock was a nonmarital asset. In fact she argues that it was a marital asset. As we have said, the burden of proving an asset is nonmarital falls on the proponent of that position. Here, Patrick conceded that marital funds were used at least in part to purchase the gas stock. He presented no evidence regarding what percentage of the purchase was made with nonmarital funds. The court found that at least one of the accounts from which the money for the investment was derived was a marital account. Therefore, we cannot agree with the district court's finding that the gas stock constituted nonmarital property. We are cognizant that the following question and answer occurred between Joni's counsel and Joni during trial: "Q. You're fine with him taking that gas stock free and clear from you? A. Oh, yes. He can have the gas stock."

We do not find that Joni's answer conceded that the gas stock was nonmarital. We cannot tell from the record how "free and clear" was defined by counsel or by Joni. We cannot find that Joni's testimony can be characterized as conceding that the gas stock should constitute a nonmarital asset, particularly given Patrick's testimony that commingled funds were used to purchase it. Therefore, we find that the district court abused its discretion by finding that the parties agreed that the gas stock should be awarded to Patrick as a nonmarital asset. We will address how the gas stock should be awarded following our analysis of the overall division of property.

In characterizing the disputed assets, the district court found that Patrick had not met his burden to prove that specific proceeds from sales of gifted properties were sufficiently traceable to be designated as nonmarital. However, in dividing the marital estate, the court acknowledged that a significant portion of the marital assets was attributable to the gifts made by Patrick's father. Based on that finding, the court found that "[E]quity requires that the marital estate be divided to award Patrick two-thirds and Joni one-third." Joni argues that though the court's decision meets the general rule of awarding a party one-third to one-half of the marital estate, it is nonetheless inequitable, failing to meet the requirement of fairness and reasonableness required by case law. See *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In addition to the specific criteria listed in § 42-365, in dividing property and considering alimony upon a dissolution

of marriage, a court should consider the income and earning capacity of each party and the general equities of the situation. *Anderson v. Anderson, supra*.

Our review of pertinent case law does reveal cases that have affirmed somewhat varying results. For example, in *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012), we found no abuse of discretion in the finding of the district court which awarded 50 percent of the marital estate to the wife even though the evidence demonstrated that the husband's parents provided the parties substantial financial assistance in their farm operation. In *Osantowski v. Osantowski, supra*, the Nebraska Supreme Court found that the district court did not abuse its discretion in awarding a 50/50 split of the marital estate even though the evidence demonstrated that the husband contributed more financially to the marital estate personally and through gifts from his family. In other cases, the Supreme Court and this court have affirmed district court decisions which divided the marital estate unequally. See, e.g., *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998); *Myhra v. Myhra*, 16 Neb. App. 920, 756 N.W.2d 528 (2008). Each case is dependent on its facts.

Our decision is guided by our standard of review.

While reasonable minds could differ as to what the appropriate distribution of the marital estate within the general range should have been in this case, an abuse of discretion is a highly deferential standard of review. Our opinion, based on an independent review of the record, supplants the court's decision only in the instance where its decision was untenable.

*Osantowski v. Osantowski*, 298 Neb. at 371, 904 N.W.2d at 274. Here, there is substantial evidence that a significant portion of the marital estate exists because of the gifts of real estate provided by Patrick's father. As such, we cannot find that the district court abused its discretion by awarding Patrick 66.5 percent of the marital estate.

The remaining unresolved issue is the award of the gas stock which we have found to be marital. Assuming the gas stock has some value, an award of the entirety of that stock to Patrick would result in Patrick receiving more than two-thirds of the marital estate. There is no evidence to support granting Patrick a larger than two-thirds share. Since there is no evidence as to present value, the gas stock can only be divided in kind. We find that Patrick shall be awarded 66.5 percent of the shares of gas stock and Joni shall be awarded the remaining 33.5 percent. Although our record is unclear, the parties' tax returns could be read to indicate that the gas stock exists in more than one company. If that is the case, each company's stock will be divided on a 66.5/33.5 percent basis.

## 2. ALIMONY

"The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate." § 42-365. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. The ultimate criterion is one of reasonableness. *Wiedel v. Wiedel*, 300 Neb. 13,

911 N.W.2d 582 (2018). An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id.*

Joni contends that the district court erred in failing to award her alimony because Patrick has a higher income, Patrick received a larger share of the marital estate, which included more income-producing assets, and she made postseparation purchases based on assurances Patrick made to her before trial. We first note that Joni did not specifically request that she be awarded alimony in her complaint for legal separation. Her complaint does include a prayer for "other, further, and different relief as the Court may deem just and equitable," however. Additionally, Patrick concedes that Joni did request alimony at trial.

The evidence shows that during the first portion of their marriage, Joni left her career and cared for their children before eventually returning to part-time work. During this period, Patrick earned a significantly higher income than he did at the time of trial. The evidence shows that in 2009, nearly a decade before dissolution proceedings began, Patrick switched careers and began earning significantly less than he had previously. He was earning approximately $42,000 at the time of trial while Joni was earning approximately $33,000. Moreover, as the decree notes, Joni's share of the marital estate included a home, a vehicle, and no debts. We further note that Joni has been awarded half the proceeds from the sale of the 40 acres as well as two non-retirement investment accounts from which income can be derived. Her present ability to support herself is not in doubt. We therefore find that the district court's failure to award her alimony does not constitute an abuse of discretion.

### 3. ATTORNEY FEES

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases. *Id.* Additionally, attorney fees and costs are often awarded to prevailing parties in dissolution cases as a matter of custom. See *id.* See e.g. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Moore v. Moore, supra.*

Where a party seeks to recover attorney fees, the best practice will always be to provide an affidavit or other evidence such as testimony or exhibits. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). The filing of an affidavit is not absolutely required, however. *Id.* Litigants who do not file such an affidavit or present other evidence risk the loss of attorney fees because of the difficulty of discerning such information from the record alone. *Id.*

Joni argues that the district court should have ordered Patrick to pay her attorney fees because he "is well-able to" and because his share of the marital estate was larger and included a greater amount of income-producing assets. Brief for appellant at 29. She also argues that Patrick paid some of his attorney fees from a marital account and caused unnecessary attorney fees for her by not timely answering discovery requests. Joni included an affidavit for attorney fees, which

shows that her attorney billed her at a rate of $180 per hour for a total of $15,727.74 for her representation throughout the matter. Attached to the affidavit was a 15-page statement dated May 30, 2019, which showed a balance remaining due of $8,676.59. In her complaint, Joni did request that the court award her "a reasonable attorney's fee and costs."

The district court directed Patrick to pay a marital debt of attorney fees in the amount of $1,247 for services rendered to Patrick "[s]everal years ago" in relation to "numerous issues with the lake," which remained outstanding at the time of the dissolution proceedings. However, the court did not otherwise address the issue of attorney fees, especially with respect to those incurred during the dissolution proceedings. It made no mention of Joni's request for attorney fees.

We recognize that the court contemplated awarding attorney fees by virtue of the decree's subheading "IV. DEBTS AND ATTORNEY FEES," but we are mindful that the court did not explicitly deny Joni's request outright. We read the decree's silence as to Joni's request to be the court's denial of such request. See *Olson v. Palagi*, 266 Neb. 377, 665 N.W.2d 582 (2003). Joni essentially argues that the district court abused its discretion in not ordering Patrick to pay her attorney fees because Patrick has the financial ability to pay her fees. While the court did award Joni a smaller share of the marital estate, she nevertheless received substantial assets, and she works full time earning a salary which is not significantly below Patrick's. Joni does not lack the financial resources necessary to pay her attorney fees. Therefore, we can find no abuse of discretion in the district court's denial of Joni's request for attorney fees.

VI. CONCLUSION

Based on the foregoing, we affirm the district court's valuation and division of the parties' marital estate as modified herein to account for the error in the value of Joni's retirement account and the resulting adjustments necessary to maintain the court's percentage split of the marital estate. We further modify that part of the decree which awarded Patrick the gas stock as a nonmarital asset and find that the gas stock is a marital asset which should be divided in kind and awarded as set out herein. Additionally, we affirm the court's denial of Joni's requests for alimony and attorney fees.

AFFIRMED AS MODIFIED.