756 N.W.2d 528 (2008)
16 Neb. App. 920
Debra Kaye MYHRA, Appellee,
v.
Phillip Jerome MYHRA, Appellant.
No. A-06-1403.
Court of Appeals of Nebraska.
August 19, 2008.
*534 Larry R. Demerath, of Demerath Law Offices, Omaha, for appellant.
Edith T. Peebles and Anthony W. Liakos, of Brodkey, Cuddigan, Peebles & Belmont, L.L.P., Omaha, for appellee.
INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.
SIEVERS, Judge.
Debra Kaye Myhra filed for dissolution of her marriage in the district court for Douglas County. Before trial, her husband, Phillip Jerome Myhra, learned that his employer could merge with another company, which would entitle him to a multimillion-dollar bonus. Phillip did not disclose this information to Debra, despite her interrogatory asking him whether he had any interest in any expectations or awards. After Debra rested her case but before a decree had been issued, Debra made a motion to the court to withdraw her rest to introduce evidence about the merger and the bonus. The court sustained her motion, and she introduced evidence regarding Phillip's bonus. The trial court found that the merger bonus was marital property and awarded Debra a portion thereof. Phillip now appeals.

FACTUAL AND PROCEDURAL BACKGROUND
Debra and Phillip were married on September 9, 1978. They have three children, born April 17, 1987, April 4, 1990, and July 19, 1995. Since mid-December 1999, Phillip has worked as the executive vice president for UICI, a health insurance company. In 2002, Phillip earned $499,723. In 2003, Phillip earned $644,546. In 2004, Phillip earned $855,153. In 2005. Phillip earned $814,060. Debra works as a medical technologist and earns approximately $25 per hour working part time, but she has earned as much as $60,000 per year when working full time.
Debra filed a petition for dissolution of marriage in the district court for Douglas County on August 6, 2004. On October 6, 2004, Debra submitted interrogatories to Phillip, including the following interrogatory: "Do you own or have a direct or indirect interest in any other property or thing of value whatsoever, including but not limited to royalties, copyright, trademarks, expectations or awards?" During the pendency of the action, Phillip never disclosed that UICI was contemplating a merger with an investment group and that *535 such a merger would entitle Phillip to a multimillion-dollar bonus.
In the summer of 2005, Phillip was aware that UICI could potentially merge with the investment group. On September 15, 2005, UICI entered into a merger agreement with the investment group. As part of this merger agreement, UICI adopted a bonus plan in which Phillip became entitled to a merger bonus, assuming the merger was completed and he was still employed upon the date the merger was completed. The amount of his bonus would be based upon the price of UICI stock on the date the merger was completed.
On October 20, 2005, a trial on Debra's petition for dissolution was held in the district court for Douglas County. At the time of the trial, the merger agreement was available to the public because it was filed with the Securities and Exchange Commission on September 15, 2005, and such filing revealed that a pool of $20 million would be available to pay bonuses to four UICI executives, one of whom was Phillip, upon completion of the merger.
Debra rested her case on October 20, 2005, but on December 15, she made a motion to the district court to withdraw her rest so that she could introduce evidence regarding the merger and merger bonus. The district court found that Phillip had failed to supplement his answers to interrogatories and that Phillip had concealed information regarding the merger and merger bonus from Debra and the court. It therefore allowed Debra to reopen her case.
On July 25, 2006, further trial proceedings were held, and Debra introduced evidence that on April 5, 2006, the merger between UICI had been completed, that Phillip's interest in the merger bonus had vested, and that the gross amount of the merger bonus was $3,378,160, 60 percent of which had been distributed to Phillip on the day the merger closed and 40 percent of which was to be distributed to him within 180 days of the merger. Evidence was also introduced that Phillip had cashed out certain UICI stock options for $1,909,500 and sold certain UICI stock for $60,700, and that he had received a gross bonus in 2006 of $398,937 for work performed in 2005 (the 2005 bonus). Phillip attempted to introduce the testimony of Dennis Hein, a certified public accountant. Hein would have testified that Phillip's merger bonus would not have been considered an asset under generally accepted accounting principles until the date that it vested on April 5, 2006, when the merger was completed. Debra made a motion in limine asking the district court to exclude the testimony of Hein, and the district court sustained the motion.
In the district court's decree of dissolution of marriage, it found that all of the parties' property was marital property, including the merger bonus and the 2005 bonus; that the assets for which evidence was adduced at the October 20, 2005, trial would be valued based on that date; and that assets for which evidence was introduced at the July 25, 2006, trial would be valued based on that date. The district court awarded Phillip $7,796,574 of marital property. It awarded Debra a $2 million judgment to be paid within 3 years of the decree, plus interest at 7.014 percent; $485,964 worth of marital assets; $3,000 per month in alimony until she reached age 65; and $25,000 in attorney fees. Phillip timely appealed.

ASSIGNMENTS OF ERROR
Phillip assigns the following errors to the district court: (1) allowing Debra to withdraw her rest, (2) allowing Debra to introduce evidence beyond the scope of her motion to withdraw her rest, (3) determining *536 that the merger bonus and 2005 bonus were marital property, (4) using incorrect dates to value the parties' marital estate, (5) sustaining Debra's motion in limine regarding the testimony of Hein, (6) acting with passion and prejudice, (7) awarding unreasonable alimony, (8) finding Phillip in contempt for certain sales of stock made by him, (9) failing to find Debra had unclean hands, and (10) failing to clarify the interest on the judgment.

STANDARD OF REVIEW

Dissolution of Marriage, Division of Marital Property, and Alimony.
In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Tyma v. Tyma, 263 Neb. 873, 644 N.W.2d 139 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. Bauerle v. Bauerle, 263 Neb. 881, 644 N.W.2d 128 (2002).
The abuse of discretion standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. Millatmal v. Millatmal, 272 Neb. 452, 723 N.W.2d 79 (2006).

Reopening Case and Withdrawing Rest.
The reopening of a case to receive additional evidence is a matter within the discretion of the district court and will not be disturbed on appeal in the absence of an abuse of that discretion. Jessen v. DeFord, 3 Neb.App. 940, 536 N.W.2d 68(1995).

Unclean Hands.
In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. Burk v. Demaray, 264 Neb. 257, 646 N.W.2d 635 (2002).

ANALYSIS

Whether Debra Should Have Been Allowed to Withdraw Her Rest.
It is clear that the primary reason Debra was allowed to withdraw her rest was because the district court found that Phillip had knowingly concealed information about the merger bonus from her and from the court. Debra had asked Phillip via interrogatory whether he had any interest in any expectations or awards. Despite this question, Phillip never disclosed, prior to the 2005 trial, to Debra that he could receive the merger bonus or the conditions upon which receiving such hinged. The terms of the merger were such that the bonus provided for therein was clearly an expectation. An expectation is a "basis on which something is expected to happen; esp., the prospect of receiving wealth, honors, or the like." Black's Law Dictionary 598 (7th ed. 1999). Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Neb. Ct. R. Disc. § 6-326(b)(1). Clearly, Debra was entitled to discovery regarding Phillip's possible merger bonus.
*537 Under § 6-326(e), a party has a duty to supplement answers to interrogatories as follows:
(2) A party is under a duty seasonably to amend a prior response if he or she obtains information upon the basis of which ... (B) he or she knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in sub-stance a knowing concealment.
Based on these rules, Phillip had a duty to disclose the potential of the merger bonus. It was not Debra's duty to independently determine that Phillip could receive a merger bonus, for example, by scouring SEC filings, because she had already queried him via an interrogatory (unobjected to, we note) that was broad enough to include the expectation of the merger bonus. Even if he did not know of the potential merger bonus until September 15, 2005, that would have been still more than a month before the October 20 trial. And when he learned of the $20 million bonus pool in which he could share, his prior responses to interrogatories were no longer true, he should have supplemented his answers, and his failure to amend his responses was a knowing concealment. On this basis, the trial was reopened and Debra was allowed to introduce evidence on the merger bonus and related facts, and we agree with the district court's view of the discovery issue. Phillip argues that the case should not have been reopened.
Among factors traditionally considered in determining whether to allow a party to reopen a case to introduce additional evidence are (1) the reason for the failure to introduce the evidence, i.e., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly surprise or unfairly prejudice the opponent. Jessen v. DeFord, 3 Neb.App. 940, 536 N.W.2d 68 (1995) (citing 75 Am. Jur. 2d Trial § 382 (1991)).
Phillip essentially argues that Debra should have introduced evidence of the merger bonus during the 2005 portion of the trial. He claims she was not diligent in her efforts to introduce evidence of the merger bonus, waited too long to introduce such evidence, and had no justification for failing to introduce such evidence. However, all of these arguments are completely refuted by the fact that Phillip concealed information from Debra regarding the merger bonus, even though he had such information no less than 30 days before the trial and admits he was aware of the potential of the merger in the summer of 2005. In an affidavit, Phillip claims Debra had actual and constructive notice of the merger because of the SEC filing, as well as alleged conversation with Debra's lawyer at a break during the trial in which he allegedly told the lawyer that there was going to be a merger.
There are several reasons why this argument is unavailing. First, Philip is essentially arguing that "Debra should have discovered, by searching SEC filings, that she could not trust his interrogatory answers," although they were given under oath. Obviously, to embrace this notion would be to emasculate the core notions of full and honest disclosure and discovery upon which our civil judicial system depends. Second, the affidavit does not claim Debra, via the conversation between Phillip and Debra's lawyer, had actual or constructive knowledge of the merger bonus. *538 Phillip had been specifically asked whether he had any interest in any "expectations or awards," and at no point was Phillip relieved of his duty to supplement his answers to interrogatories and provide Debra information regarding the merger bonus. It was his failure to do so which prevented Debra from introducing evidence regarding the merger bonus in the 2005 portion of the trial.
Phillip also claims that the evidence Debra introduced in the 2006 portion of the trial was inadmissible and immaterial and that he was prejudiced by its admission. However, the claim is really an argument that the merger bonus was not marital property, and we address that question below. Its relevancy is obvious.
Phillip also asserts that the district court erred in allowing Debra to introduce evidence beyond the scope of her motion to withdraw her rest. But, admission of testimony beyond the scope of the permission granted to adduce additional testimony is discretionary. See Lewelling v. McElroy, 148 Neb. 309, 27 N.W.2d 268 (1947). The additional evidence Debra was allowed to introduce, such as information regarding Phillip's stock and stock options and his 2005 bonus, was closely related to the scope of her motion to withdraw her rest. Prior to the merger, Phillip held stock and stock options in UICI, and as a result of the merger, Phillip was required to sell these options. And Phillip's 2005 bonus was based on the same year, 2005, during which UICI entered into the merger agreement. The district court did not abuse its discretion in receiving such evidence, because it was related to the merger and the bonus flowing therefrom.
The district court allowed Debra to withdraw her rest so that she could introduce evidence regarding the merger bonus, evidence which Phillip had wrongfully and knowingly concealed from her. The district court did not abuse its discretion in sustaining Debra's motion to withdraw her rest.

Whether District Court Abused Its Discretion by Determining That Merger Bonus and 2005 Bonus Were Marital Property.
The district court chose July 25, 2006, as the valuation date for the merger bonus and the 2005 bonus. The district court selected this valuation date for these assets because it was on that date that evidence was introduced regarding them. Phillip argues that the district court abused its discretion in using this valuation date because it is not rationally related to the bonuses and the bonuses did not arise from the joint efforts of the parties.
There is no "hard and fast" rule concerning valuation dates so long as the selected date bears a rational relationship to the property to be divided, and the selected date is reviewed for an abuse of discretion. See Walker v. Walker, 9 Neb. App. 694, 618 N.W.2d 465 (2000).
We cannot say the district court abused its discretion in selecting July 25, 2006, as the valuation date for the merger bonus. Phillip's claim that the merger bonus is not the product of the parties' joint efforts is not supported by the nature of the bonus. The bonus was contingent on Phillip's continued employment until the completion of the merger and also on the UICI stock price. It does not appear that the merger bonus is based only on some discrete time period of Phillip's employment such that these efforts can be distinguished from the parties' joint efforts made during the marriage. See Davidson v. Davidson, 254 Neb. 656, 578 N.W.2d 848 (1998) (to extent husband's unvested employee stock options and stock retention shares were accumulated and acquired during marriage, they were accumulated *539 and acquired through joint efforts of parties). Rather, the merger bonus appears to be based on Phillip's cumulative efforts as an executive vice president with UICI from mid-December 1999 until the date the merger was completed. Phillip was not required to continue his employment with UICI or the subsequent entity formed by the merger beyond the date when the merger bonus vested in order to receive the merger bonus. From this fact, it is a reasonable inference that the merger bonus was a reward for Phillip's past efforts, rather than future services. This can also be seen in the fact that the merger bonus was indexed to UICI's stock price at the time of the merger. Phillip's contribution to UICI's stock price was obviously a key component of his career with UICI, as well as a form of compensation in the sense that the higher the stock price, the more valuable the options. Phillip's efforts as a high ranking executive throughout his employment with UICI from mid-December 1999 until the merger bonus vested on April 4, 2006, obviously contributed to the UICI stock price. Because the merger bonus was based on Phillip's efforts for many years during which he was married to Debra, we cannot say the district court abused its discretion in picking a valuation date for the merger bonus of July 25, 2006, and finding that the merger bonus was marital property.
Phillip also argues that there is no rational relationship between the valuation date of July 25, 2006, and the 2005 bonus. It does appear that the 2005 bonus, which was based on Phillip's efforts in 2005, is not so much a product of the parties' joint efforts, particularly considering that Debra filed for divorce in 2004. However, we note that even if we were to consider the 2005 bonus as Phillip's nonmarital property, we nevertheless would not reduce the district court's allocation of roughly one-third of the marital estate to Debra, because such is on the low end of the accepted range. Because this was a long-term marriage to which Debra contributed in a substantial way, her portion of the marital estate could have been closer to one-half. The district court's judgment of $2 million, in combination with the $485,964 worth of assets Debra was awarded, is approximately one-third of the net marital estate of $8,334.731.87even if we were to remove the 2005 bonus from the marital estate, we would not reduce her allocation of the marital estate. We recognize these figures do not account for taxes Phillip has paid or will pay on certain assets, but the evidence on tax consequences is limited to Phillip's testimony that he was in the "35% bracket." That information is insufficient for us to make any findings about the tax consequences of the bonus or the stock options. But even if we used a hypothetical rate of 35 percent of the bonus and stock options, Debra's share of the net marital estate would still be within the one-third to one-half rule parameter for property division in a dissolution. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006). Here, the district court's award to Debra, while in line with the one-third to one-half rule, was on the low end of that permissible range. Therefore, even if we were to agree with Phillip that the 2005 bonus was non-marital property, we would not reduce Debra's award, given her substantial contributions to the parties' marriage over the course of nearly 30 years.
We affirm the district court's valuation date with regard to the merger bonus, and to the extent we agree with Phillip's argument *540 that the 2005 bonus should have been considered his non-marital property, we nevertheless would not and do not disturb Debra's award.

Whether District Court Erred in Sustaining Debra's Motion in Limine Regarding Testimony of Hein.
Phillip attempted to introduce the testimony of Hein, a certified public accountant, who would have testified that for the purposes of generally accepted accounting practices, the merger bonus was not an asset until April 6, 2006, when the merger was completed. On Debra's motion in limine, the district court excluded the testimony of Hein. Phillip argues that this testimony should not have been excluded and that he was prejudiced by its exclusion.
Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. See Neb.Rev.Stat. § 27-401 (Reissue 1995).
Under that definition of relevancy, the testimony of Hein may have been of some marginal relevancy, but was certainly not determinative as to whether the merger bonus was marital property, and should have been considered by the trial judge "for what it was worth." That said, the determination of what is marital property is fundamentally guided by Nebraska case lawnot accounting principles. Because of our de novo standard of review, we consider Hein's testimony via the offer of proof. After considering such, we conclude that the trial court did not err in concluding that the merger bonus was marital property, irrespective of an accountant's opinion to the contrary. Therefore, while Hein's testimony should have been received, there is no prejudice to Phillip from its exclusion.

Whether District Court Acted With Passion and Prejudice.
Phillip claims that the district court's findings that all assets and debts of the parties were marital was motivated by passion or prejudice. However, there is simply no proof that the district court's determinations were the consequence of anything other than appropriate legal determinations.
The partiality of a judge is established when a reasonable person would have to conclude that a judge was partial to one party to the action. See, Dowd v. First Omaha Sec. Corp., 242 Neb. 347, 495 N.W.2d 36 (1993); State v. Pattno, 254 Neb. 733, 579 N.W.2d 503 (1998). Other than not liking the trial judge's rulings, Phillip points to nothing in the record which would satisfy this standard.
Here, the district court's determination that all assets and debts were marital was based on the evidence and established precedent. Obviously, Phillip's primary concern is the merger bonus and the reopening of the record. We have previously explained our strong agreement with the court's view of the discovery issue that readily justified the reopening of the record. We have explained above why the merger bonus is marital property, and there is no proof that anything other than appropriate legal determinations caused the district court to find the same.

Whether District Court Abused Its Discretion in Its Award of Alimony.
Phillip claims the district court awarded unreasonable alimony. In dividing property and considering alimony upon a dissolution of marriage, a court should *541 consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. Schaefer v. Schaefer, 263 Neb. 785, 642 N.W.2d 792 (2002). In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. Bowers v. Lens, 264 Neb. 465, 648 N.W.2d 294 (2002). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. Id.
The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. Kalkowski v. Kalkowski, 258 Neb. 1035, 607 N.W.2d 517 (2000). However, disparity in income or potential income may partially justify an award of alimony. Bauerle v. Bauerle, 263 Neb. 881, 644 N.W.2d 128 (2002).
Here, the parties were married for nearly 30 years and each party made substantial contributions to the marriage. The district court awarded Debra $3,000 per month until she reaches the age of 65 years, dies, or remarries, whichever occurs first. There is great disparity between the parties' incomes. Debra has never earned more than $60,000 in a year and currently earns $25 per hour for part-time work while being primarily responsible for the raising of the parties' three children. Phillip earned more than $800,000 per year in 2004 and 2005. Thus, alimony of $36,000 per year for a maximum of approximately 10 years seems rather insignificant and completely appropriate in the factual setting of this case. Clearly, Phillip will have no problem paying Debra $3,000 per month, and the district court's award of alimony to Debra was reasonable and was not an abuse of its discretion.

Whether District Court Erred in Finding Phillip in Contempt for Certain Sales of Stock Made by Him.
Although Phillip assigns error to the district court's finding him in contempt for certain sales of stock, he does not specifically argue this point, and therefore we will not address it. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. In re Estate of Matteson, 267 Neb. 497, 675 N.W.2d 366 (2004).

Whether District Court Erred in Failing to Find That Debra Had Unclean Hands.
Phillip claims that Debra had unclean hands and should therefore have been denied the opportunity to withdraw her rest and receive attorney fees. Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. Manker v. Manker, 263 Neb. 944, 644 N.W.2d 522 (2002).
Phillip's brief implies that Debra's claim to have been unaware of his merger bonus prior to her motion to withdraw her rest is dishonest, but there is simply no evidence of this. The fact that, in a conversation between Phillip's and Debra's lawyers during trial, the pendency of the merger was mentioned does not equate to *542 the knowledge that Debra or her counsel was aware Phillip was in line to receive a multimillion-dollar bonusremembering that such topic was covered by the unanswered interrogatory we have previously discussed in considerable detail. Phillip also claims that Debra "falsely alleged that she was unable to procure the deposition testimony of ... Hein" and thus blocked Hein's testimony. But the record shows that Hein stated to Debra's counsel less than 2 weeks before trial that he did not have sufficient information from Phillip to answer Debra's questions. Therefore, Debra's counsel did not falsely state that she was unable to obtain Hein's testimony. The district court did not err in not finding that Debra had unclean hands.

Whether District Court Erred in Failing to Clarify Interest on Judgment.
Phillip claims that the decree of dissolution was unclear as to whether interest should accrue on the deferred judgment from the date of the decree, and Phillip claims that interest should not accrue on the $2 million judgment from the date of the decree.
A district court can exercise its discretion and award interest on deferred installments payable as part of a marital property distribution. See Seemann v. Seemann, 225 Neb. 116, 402 N.W.2d 883 (1987). When exercising its discretionary power, one factor the district court should consider when determining whether a property settlement payable in installments should draw interest from the date of judgment is the burden on the payor-spouse. See Nickel v. Nickel, 201 Neb. 267, 267 N.W.2d 190(1978).
Despite Phillip's claim that the decree was vague on the issue of interest, the district court, in fact, clearly ordered that interest accrue on the deferred award from the date of the decree, but that he could pay the judgment early. Given that Phillip quite obviously has the resources to pay the judgment immediately and thereby avoid interest, there simply is no reason that he should not pay interest on it if he chooses to defer payment. Payment of interest in these circumstances is not an unreasonable burden for him.

CONCLUSION
For the foregoing reasons, we affirm the decision of the district court in all respects.
AFFIRMED.