IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CERVANTES V. DARNELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RHETT CERVANTES, APPELLANT AND CROSS-APPELLEE,

V.

KASSANDRA DARNELL, APPELLEE AND CROSS-APPELLANT.

Filed June 20, 2015.    No. A-16-876.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Bergan E. Schumacher, of Bruner Frank, L.L.C., for appellant.

Michael J. Synek for appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Rhett Cervantes appeals and Kassandra Darnell cross-appeals from an order entered by the district court for Buffalo County modifying an order of paternity and support entered on September 5, 2014. On appeal, Rhett argues the district court erred in failing to reopen evidence after the conclusion of trial and determining there had not been a material change in circumstance since entry of the prior order. On cross-appeal, Kassandra argues the district court erred in excluding evidence offered by Kassandra at trial, failing to apply the child support order retroactively to the first day of the month following the filing date of the application for modification, failing to order Rhett to pay her attorney fees, and allowing Rhett to proceed on appeal in forma pauperis. For the reasons set forth below, we cannot affirm all actions taken by the district court after the notice of appeal. We affirm the orders of the district court entered on August 11, 2016, and September 9, 2016, regarding custody, support, attorney fees, and exclusion of evidence. We also affirm the

- 1 -

district court's September 14, 2016, and November 17, 2016 orders granting in forma pauperis status to appellant. We decline to review any other orders entered on September 14, 2016, or later for reasons set out hereafter.

## II. BACKGROUND

The district court first entered an order in 2008 establishing paternity and child support for the parties' two children, Izek, born in 2007, and Cody, born in 2008. The children had lived with Kassandra from birth until 2014. On September 5, 2014, the district court modified the paternity and support order pursuant to a joint stipulation of the parties. The September 2014 order awarded the parties joint legal and physical custody of the children with specific parenting time allotted to the parties. Rhett received primary placement of the children during the school year and Kassandra received parenting time one night per week and every other weekend. Kassandra received primary placement of the children during summer vacation. Kassandra was obligated under the order to pay $50 per month in child support.

Rhett filed a complaint to modify the September 2014 order on October 27, 2015. Rhett alleged that there had been a material change in circumstance in that Kassandra had "placed the children in harm by exposing them to an unsafe environment." Rhett requested sole legal and physical custody of the children with a modification of parenting time granted to Kassandra. Rhett also requested a recalculation of the child support award. Kassandra filed an answer and counterclaim for modification on March 17, 2016. In her counterclaim Kassandra alleges that the parties have not followed the September 2014 parenting plan, that Rhett interfered with her parenting time, and that the communication between the parties had broken down. Kassandra requested that the district court either award her sole custody of the children or maintain the September 2014 order with the revised provision that she be awarded primary placement of the children. Kassandra also requested recalculation of the child support award. The parties proceeded to trial on April 19, May 4, and July 5, 2016.

Rhett and Kassandra were never married. Rhett has 3 other children. He does not have custody of these 3 children, but does exercise parenting time and provides support. Kassandra has one other daughter who resides with her. Currently, both parties reside in Kearney, Nebraska.

At the time of trial, Rhett was 29 years old and employed at Baldwin Filters. Since the September 2014 order, Rhett has been, by all accounts, a supportive father. Rhett is very involved with the children's academics. Multiple school officials testified during Rhett's case. Darleen Farwell, the elementary school's secretary, testified that Rhett checks in with the school multiple times per week regarding how the children behaved that day. Kara Longshore, Izek's teacher, testified that Rhett speaks with her once or twice per week regarding Izek's schoolwork and behavior. Mark Stute, the principal at the elementary school, testified he saw Rhett at the school multiple times per week. Although the children were rarely assigned work to do at home, Ms. Longshore testified that Rhett is very involved in Izek's reading program, as well as his math and language arts program. Ms. Longshore testified that Rhett had attended every parent-teacher conference at the school.

In addition to the children's academics, Rhett is very involved with their religious upbringing. Roger Anderson, a licensed pastor, testified that Rhett and his children are in church

every Sunday. Anderson testified that Rhett is training to become a licensed pastor as well. He testified that Rhett works with a support group for previously incarcerated individuals, a young persons' Bible study group, and the church's youth basketball program. Stan Murdoch, the senior pastor at Rhett's church, testified that he meets with Rhett once per week for training to become a licensed pastor. Murdoch testified that all the interactions he has seen between Rhett and his children have been positive.

By almost all accounts, Rhett has implemented significant positive changes in his life as to sobriety, living a productive and law-abiding life, and becoming an active parent in his children's lives. Rhett testified that he initiated this modification action because he believed Kassandra was not providing a safe environment for their children. Rhett testified to a number of concerns he had, including Kassandra's lack of involvement with the children's education, her inappropriate behavior in front of the children, guns and knives left within the reach of the children, the children returning from her parenting time with injuries, losing Cody's EpiPen, and Kassandra allowing drug use around the children during her parenting time.

Rhett testified that after the children come home from weekend parenting time with Kassandra, they are typically hungry, tired, and less focused. He testified that they do not listen as well as before her parenting time. He additionally testified that they have come back from Kassandra's parenting time without completing their homework. Rhett testified that the living situation at Kassandra's home is chaotic. Rhett testified that he believed that a friend had been staying at Kassandra's home for an extended period of time, in addition to the other residents.

Rhett testified about numerous incidents that he felt were inappropriate behaviors in front of their children. Rhett testified that he used to be friends with some of the people that Kassandra associates with regularly. He testified that he believes drug use is prevalent at Kassandra's home and that the children have returned from Kassandra's parenting time with their clothes smelling of marijuana. Rhett testified that he personally observed marijuana being smoked in front of the children at a barbeque.

In addition to the drug use, Rhett testified that Kassandra has acted inappropriately in the presence of the children during arguments between them. Rhett testified that law enforcement had to be called on one occasion because Kassandra was attempting to take the children from his home when it was not her parenting time. Both parties testified that they can no longer communicate effectively and that Rhett is no longer welcome at Kassandra's residence.

Rhett testified that he had observed several guns around Kassandra's residence in February 2015. Rhett testified that he observed 2 handguns and a rifle that were outside of a gun safe. He testified that this concerned him greatly because his children enjoy playing cops and robbers and could easily reach the guns. Rhett testified that he had also observed knives at Kassandra's residence. He testified he observed buck knives and hunting knives laying on the coffee table in the residence.

Rhett testified that he was concerned with the children's safety because they would return from Kassandra's residence with bruises and injuries, but conceded that he never took the children to the doctor for these injuries. Rhett also testified that Cody lost his EpiPen during Kassandra's parenting time. Rhett testified that Cody losing his EpiPen is very concerning for him because

Cody could potentially go into anaphylactic shock and die before an ambulance could arrive if he ingested something containing an allergen.

At trial, Kassandra called two friends and her father's longtime girlfriend to testify on her behalf. Jessica Rouse, Karen Keith, and Sara Hansen all testified that they had observed Kassandra with her children on multiple occasions and that Kassandra was a good and loving mother. All 3 witnesses had been to Kassandra's residence and testified that it was a clean and safe environment. They additionally testified that the children were always dressed in clean clothes and that Kassandra regularly cooked for the children.

At the time of trial, Kassandra was 26 years old. Kassandra graduated high school in 2007. She received her cosmetology license in 2010 and her certified nursing assistant's license in 2015. At the time of trial, she worked at Daylight Donuts in Kearney.

Kassandra lives with her significant other, Trenton Devitt, in a three-bedroom residence. Kassandra testified that when Izek and Cody are at Kassandra's residence, they sleep in the same room as Devitt's son, Carson. Kassandra's daughter and Devitt's daughter sleep in the second bedroom, and Kassandra and Devitt occupy the third bedroom.

During Kassandra's testimony, she denied nearly all of Rhett's claims that she does not provide a safe environment for their children. Kassandra denied that she was not actively involved in her children's education. Kassandra admitted that she had not been to a parent-teacher conference in the last year, but testified it was due to her work schedule and inability to effectively communicate with the children's school. Kassandra testified that there was an incident at the children's school when she tried to remove them from school early to take a trip to visit her mother. Kassandra testified the school officials would not release the children without Rhett's consent. She testified that this incident explained the acrimony between her and the school and why they rarely communicate with her. The school officials testified that much of the school communication is published online. The remaining school information and communications are generally sent through the student's journal, the school newsletter, or automated phone system.

Kassandra testified that she was involved in and agreed with the decision to have the children transfer to another school. She also testified that she did not oppose the children attending summer school, but that Rhett did not contact her in advance about Rhett's decisions. Kassandra testified that she learned of Rhett's wish to enroll the children in summer school through his attorney. Kassandra did not object to summer school so long as it did not interfere with her parenting time in the summer. She additionally testified that no one from the school had ever contacted her with any concerns about the children's behavior.

Kassandra testified that she supports the children's participation in church and church activities. Kassandra was involved with the children's medical decisions until Rhett unilaterally changed the children's primary care physician. Kassandra testified that she was the person who took the children to their allergist. Kassandra testified that Cody only had a slight peanut allergy and that he could eat peanuts and be fine. However, she does not allow Cody to eat peanuts during her parenting time. Kassandra testified that Cody receives an injection to help with his allergies and that he does carry an EpiPen. Regarding the instance where the EpiPen was allegedly lost at her home, Kassandra testified that she has searched the residence multiple times. She has never found the EpiPen and questions that it was misplaced there.

Regarding the alleged injuries the children have sustained while in her care, Kassandra testified that none of the injuries required medical attention. Kassandra testified that her boys are active children and will have a minor scrape or bruise occasionally. However, she was unaware of any of Rhett's complained of injuries.

Kassandra testified that she and Rhett had co-parented without incident until October 2015. She testified that after that time, Rhett stopped communicating with her and started involving attorneys. Kassandra stated that she felt betrayed by this behavior. Kassandra admitted to yelling at Rhett during the incident when Rhett called the police, but testified that she was angry because he was accusing her of drug use and not permitting her to visit her children. Kassandra denied Rhett's claims that she takes prescribed medications for mental health issues. She testified that she has never been diagnosed nor prescribed medication for any condition, mental health or otherwise. Kassandra denied any other argument between her and Rhett in front of the children.

Kassandra testified that she and her boyfriend own guns. She testified that as soon as they are done hunting or shooting, the guns are cleaned and locked away. Kassandra testified that the guns are never laying around the house for long periods of time and that there is always an adult present when guns are out. She testified that they own a gun safe, which is located in the basement. Kassandra testified that the children have been shooting with her and Devitt, but it was closely supervised. Kassandra testified that she does not own any hunting knife and does not believe Devitt owns any type of hunting knife. She testified that she only owns steak knives, and that those are kept in a cabinet out of the reach of the children.

Kassandra testified that she does not allow drug use at her home. Kassandra was unaware of any occasion or barbeque where someone would have been smoking marijuana. She testified that she has never smelled the odor of marijuana on her children or their clothing.

Before the conclusion of trial, the district court held in camera interviews with the children, with only the court reporter and attorneys present. While the district court stated on the record that the children's interviews provided little helpful information, the court did note in its findings that the boys stated they had no unsupervised access to firearms, that they were not fearful of living at their mother's home, and in fact, enjoyed living there.

After the conclusion of trial, but before the district court entered its order, Rhett filed a motion to reopen evidence. Rhett alleged new evidence was discovered after the closing of trial that would affect the district court's determination. The district court held a hearing on the matter and denied Rhett's motion. The district court entered its order on the complaint for modification on August 11, 2016. The court found no material change in circumstance and did not modify the September 2014 order. Both parties filed motions for new trial or to alter or amend the order. On September 9, 2016, the district court overruled Rhett's motion in its entirety and altered its August 11, 2016, order and ordered Rhett to pay Kassandra $60 per month. The district court denied Kassandra's request for attorney fees in that order.

Rhett filed his notice of appeal on September 14, 2016. Rhett filed an application to proceed in forma pauperis with his notice of appeal. On the same day, September 14, 2016, the district court granted Rhett's application to proceed in forma pauperis on appeal. Kassandra filed an objection to Rhett's motion to proceed in forma pauperis on October 14, 2016. Buffalo County,

Nebraska filed an objection to Rhett's motion to proceed in forma pauperis on appeal on November 15, 2016. The district court overruled both motions on November 17, 2016. Buffalo County did not appeal the district court's ruling.

Meanwhile, the parties filed a stipulation regarding the child support order on November 4, 2016. The parties requested the district court vacate its child support orders dated September 9, 2016, and September 14, 2016. We note that the September 14, 2016 child support order is not in the record before us. A review of the record reveals that on September 13, 2016, Kassandra filed a motion for order nunc pro tunc alleging that the district court in its September 9, 2016 order inadvertently ordered child support based on only one child being supported instead of two and requested that child support be adjusted to $102 per month for the children and then left at the $60 per month for one child. The September 9 order set child support for the children at $60 per month even though the attached child support calculation indicated that child support should be $102 per month for 2 children and $60 per month for 1 child. While it is likely that the September 14, 2016 order corrects this oversight and conforms to the motion, we do not know specifically what that order states. In any event, the parties jointly requested an order requiring Rhett pay Kassandra $114 per month in child support in the November 4 stipulation. However, they resubmitted for decision the issue of retroactivity. On November 16, 2016, the district court vacated its child support orders dated September 9, 2016, and September 14, 2016, and ordered Rhett to pay $114 per month, commencing September 1, 2016.

## III. ASSIGNMENTS OF ERROR

Restated and consolidated, Rhett argues on appeal that the district court erred in (1) failing to grant his motion to reopen evidence; and (2) determining that the modification of the parties' custody arrangement was not warranted. Restated, reordered, and consolidated, Kassandra argues on appeal that the district court erred in (1) excluding evidence offered by Kassandra at trial; (2) failing to apply the child support order retroactively to the first day of the month following the filing date of the application for modification; (3) failing to order Rhett to pay her attorney fees; and (4) allowing Rhett to proceed on appeal in forma pauperis.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Id.*

## V. ANALYSIS

### 1. RHETT'S APPEAL

#### (a) Motion to Reopen Evidence

Rhett argues the district court erred in denying his motion to reopen evidence after the close of trial.

The reopening of a case to receive additional evidence is a matter within the discretion of the district court and will not be disturbed on appeal in the absence of an abuse of that discretion. *Thompson v. Thompson*, 18 Neb. App. 363, 782 N.W.2d 607 (2010). Among factors traditionally considered in determining whether to allow a party to reopen a case to introduce additional evidence are (1) the reason for the failure to introduce the evidence, i.e., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly surprise or unfairly prejudice the opponent. *Myhra v. Myhra*, 16 Neb. App. 920, 756 N.W.2d 528 (2008).

Rhett argues that the new material evidence would have borne significant weight on the district court's decision on his complaint to modify. Rhett also argues that he had no way of discovering the evidence because the incident occurred after the close of trial. The district court held a hearing on the matter and denied Rhett's motion. The factual record on Rhett's motion to reopen is very limited. The district court determined that Rhett did not provide sufficient evidence of the incident and if the court were to allow reopening of the evidence, it may have to reopen discovery. The district court determined that the best use of Rhett's new evidence would be in support of a new complaint to modify.

We agree with the district court. Utilizing the test prescribed by us in *Myhra, supra*, it is clear that the event triggering the motion occurred after the trial was over, therefore, it could not have been produced during the trial. While the new evidence may be material, its admissibility is unknown. The only information provided to the district court were somewhat generalized statements of counsel. The witness(es) who would testify about the event were not identified, nor was any other significant foundation laid for the purported testimony. No affidavits in support of the motion were offered, nor was there even any detailed offer of proof. The motion was made after the case was submitted for decision. As the district court noted, further discovery may be necessary to avoid unfair surprise or prejudice to Kassandra. Therefore, we cannot say that the district court abused its discretion in failing to reopen the evidence. As noted by the district court, if the new evidence is truly material, Rhett could file a new complaint to modify upon resolution of this action. In the interim, given Rhett's decision to appeal, he could seek temporary orders from the district court if he believed immediate action was necessary. We find that the district court did not abuse its discretion in denying Rhett's motion to reopen evidence.

#### (b) Failure to Modify Custody Arrangement

Rhett next argues the district court erred in failing to find that he proved there was a material change in circumstance that warranted a modification of the child custody arrangement.

A child custody modification case requires the party seeking modification to: (1) show that a material change in circumstances has occurred after the entry of the previous custody order and affecting the best interests of the child; and (2) prove that changing the child's custody is in the child's best interests. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The child's best interests requires a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923(1) (Reissue 2016). Moreover, § 43-2923 sets forth a non-exhaustive list of factors to consider in determining the child's best interests in regard to custody. Such factors include: the child's relationship with each parent, the child's desires, the child's general health and well-being, and credible evidence of abuse inflicted on the child by any family or household member. In addition to the "best interests" factors provided in § 43-2923, a court making a child custody determination may consider: the moral fitness of the child's parents; respective environments offered by each parent; the emotional relationship between the child and parents; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Schrag, supra*.

The district court found that Rhett failed to prove the existence of a material change in circumstance since the stipulated September 2014 order. We find no error in the court's finding. The district court repeatedly noted that while Rhett may have improved his parenting skills since the September 2014 order that improvement alone did not equate to a material change in circumstance. The district court noted that even though both parties testified that they no longer communicate effectively, they had communicated productively in the past. The court determined that the parties have the ability to communicate, and restore a productive co-parenting relationship. Therefore, the court found that no change was necessary as to legal custody.

Regarding physical custody, there is no question that if true, many of the concerns raised by Rhett could lead a court to conclude that a material change in circumstance exists. Rhett testified to observing one occasion of adult marijuana use in Kassandra's driveway. He also testified about smelling the odor of marijuana on the children's clothes. He testified about seeing guns and knives in the residence. He and his witnesses also testified about minor injuries sustained by the children while in Kassandra's care and her general lack of involvement in their education.

However, Kassandra's testimony flatly denied that the children had been exposed to drug use or that they had access to guns or knives. Her testimony was that the guns were only out of the gun safe when an adult was present and in control of the weapon. The children's interviews corroborated her testimony. They reported no exposure to drug use. They reported no exposure to loaded guns unless they were closely supervised. Kassandra did admit that she was not closely

involved with the school, but at least some of her failures were attributable to past work schedules. She was very engaged in their sports and activities.

We also take note, as did the district court, that for the bulk of the trial, the primary changes contained in Rhett's parenting plan consisted of (1) giving him sole legal custody and (2) changing the summer parenting time from Kassandra having the children all summer, with Rhett having an evening and alternating weekends, to a two week off and on schedule. Only after the district court pointed out the seeming disconnect between Rhett's allegations of unsafe living conditions, vis-a-vis the requested relief, did Rhett argue for vastly restricted parenting time for Kassandra.

It appears to us that much of the decision rendered by the district court comes down to an assessment of credibility. Where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). Therefore, upon our de novo review we find that the district court did not err in finding that there had been no material change in circumstance necessitating a modification of the previous child custody order.

## 2. KASSANDRA'S APPEAL

### (a) Exclusion of Evidence

Kassandra argues the district court erred by excluding evidence she attempted to offer at trial. This evidence related to Rhett's criminal history prior to the stipulated September 2014 order. She argues this criminal history was relevant to the issues of custody and parenting time.

A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification which was not contemplated when the prior order was entered. *Kramer v. Kramer*, 15 Neb. App. 518, 731 N.W.2d 615 (2007). In determining whether the custody of a minor child should be changed, the evidence of the custodial parent's behavior during the year or so before the hearing on the complaint to modify is of more significance than the behavior prior to that time. *Schrag*, *supra*.

The parties stipulated to the custody and parenting time schedule agreement in the September 2014 order. Kassandra was aware of Rhett's previous encounters with law enforcement and did not object to the custody arrangement approved by the district court in 2014. Attempting to introduce evidence of behavior prior to the previous order was not relevant to whether there had been a material change in circumstance since the entry of that order. We find the district court did not err in excluding Kassandra's evidence of Rhett's prior criminal history.

### (b) Retroactivity of Child Support

Kassandra argues the district court erred because the court should have terminated Kassandra's prior child support obligation effective October 31, 2015, and ordered Rhett to pay retroactive child support effective November 1, 2015.

Preliminarily, we must address which district court order is applicable on appeal. Neb. Rev. Stat. § 42-351(2) (Reissue 2016) provides that during the pendency of an appeal, the district court retains jurisdiction to "provide for such orders regarding custody, visitation, or support or other

appropriate orders in aid of the appeal process." This section allows a district court to, *inter alia*, enter support and visitation orders pending appeal, but it does not grant authority to hear and determine anew the very issues then pending on appeal and to enter permanent orders addressing these issues during the appeal process. *Bayliss v. Bayliss*, 8 Neb. App. 269, 592 N.W.2d 165 (1999). Orders entered as a result of a hearing expressly held on new motion to modify the decree which were filed while the initial appeal was pending are not appropriate. *Id.* This is especially true when the district court does not state that it is entering its order pursuant to Neb. Rev. Stat. § 42-351(2) or that the order is a temporary order. *Id.*

Rhett perfected his appeal on September 14, 2016. The parties filed a stipulation regarding the child support order on November 4, 2016. The parties requested the district court to vacate its child support orders dated September 9, 2016, and September 14, 2016. The parties requested an order requiring Rhett pay Kassandra $114 per month in child support. On November 16, 2016, the district court vacated its child support orders dated September 9, 2016, and September 14, 2016, and ordered Rhett to pay $114 per month, commencing September 1, 2016, the same day it ordered that Rhett's child support should begin in the September 9, 2016 order. The district court entered an order on November 18, 2016, clarifying that the child support order would not be retroactive.

The child support order entered on September 14, 2016, is not in the record before us on appeal. The district court did not have jurisdiction to enter any permanent order after the September 14, 2016 notice of appeal was filed. Therefore, the operative order on appeal is the order of September 9, 2016. The nunc pro tunc order dated September 14, 2016, may be valid if that order was file stamped prior to the notice of appeal. Alternatively, it may be valid pursuant to Neb. Rev. Stat. § 25-2001(3), which provides that clerical mistakes in an order arising from oversight may be corrected by an order nunc pro tunc at any time before the case is submitted for decision in the appellate court.

The November 16, 2016, and November 18, 2016 orders are void. The district court lost jurisdiction to enter permanent orders regarding child support once the appeal was perfected. Since child support, including the issue of retroactivity was litigated and addressed in the district court's September 9, 2016 order, the permanent orders entered in November regarding child support were void and of no effect. *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016); *Nuttleman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988).

We note, however, that the September 9, 2016 order found in the record specifically reflects the court's finding that Rhett's child support obligation should not be retroactive, but should begin on the first day of the month following the court's original order on the modification action, September 1, 2016. Therefore, we can review that order.

Whether a child support order should be retroactive is entrusted to the discretion of the trial court, and we will affirm its decision absent an abuse of discretion. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013). Absent equities to the contrary, child support modifications should generally apply retroactively to the first day of the month following the complaint's filing. *Id.* Additionally, in determining whether to apply a modification retroactively, the ability to pay is an important factor. *Id.*

In this case, the evidence surrounding Rhett's financial status demonstrates that if retroactive child support was ordered by the court, a financial hardship would exist for him and

the children. We are mindful that although Rhett carries the burden to pay child support pursuant to the agreed upon calculation, Rhett had the children in his primary possession during the applicable period of retroactivity. The district court found it was in the children's best interests if it did not order Rhett to pay retroactive child support. We find that the district court did not abuse its discretion in its decision.

### (c) Attorney Fees

Kassandra argues the district court erred in not awarding her attorney fees. Kassandra argues that because Rhett brought an unsuccessful attempt to modify their child custody order, he should be responsible for her attorney fees.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Burcham v. Burcham*, Neb. App. 323, 886 N.W.2d 536, 546 (2016).

We find that the district court did not err in refusing to award Kassandra attorney fees. There were no novel issues of law and Kassandra filed a counterclaim to modify the September 2014 order. Although unsuccessful, Rhett had justifiable concerns about the children's safety and well-being while in Kassandra's care. Therefore, we find that that the district court did not err in not awarding Deanna attorney fees.

### (d) Appeal In Forma Pauperis

Kassandra argues that the district court erred in allowing Rhett to proceed on appeal in forma pauperis.

Neb. Rev. Stat. § 25-2301.02 (Reissue 2016) provides, in pertinent part:

An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application (a) has sufficient funds to pay costs, fees, or security or (b) is asserting legal positions which are frivolous or malicious. The objection to the application shall be made within thirty days after the filing of the application or at any time if the ground for the objection is that the initial application was fraudulent. Such objection may be made by the court on its own motion or on the motion of any interested person. . . .

Ordinarily, a trial court's decision regarding a litigant's right to proceed in forma pauperis will not be disturbed on appeal unless the decision amounts to an abuse of discretion. *Fine v. Fine*, 4 Neb. App. 101, 537 N.W.2d 642 (1995).

In this case, Rhett filed his application to proceed in forma pauperis on September 14, 2016. Kassandra filed her objection on October 14, 2016. The district court held an evidentiary hearing on the objection on November 10, 2016. The district court overruled Kassandra's objection to Rhett's proceeding in forma pauperis on appeal on November 17, 2016. We have found no instance where an appellee cross-appealed the decision of the district court granting appellant's motion to proceed in forma pauperis on appeal. However, the statute provides that "any interested person" may file an objection. Assuming, without deciding, that Kassandra qualifies as an "interested person," we find that the district court did not abuse its discretion in allowing Rhett to proceed in forma pauperis on appeal.

## VI. CONCLUSION

We find that the district court did not err in denying Rhett's motion to reopen evidence. We also find that the district court did not err in finding that there had not been a material change in circumstance since the previous order of modification. We further find the district court did not err in excluding evidence Kassandra offered at trial. Additionally, we find that the district court did not err in refusing to order Rhett pay retroactive child support and did not err in refusing to award Kassandra attorney fees. We find, however, that the district court orders entered on November 16, 2016, and November 18, 2016, regarding child support are void and of no effect. Finally, we find that the district court did not err in allowing Rhett to proceed in forma pauperis on appeal.

AFFIRMED.